In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2486

IN RE:

MICHAEL S. HELMSTETTER,

*Debtor-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-05485 – **Rebecca R. Pallmeyer**, *Chief Judge.*

ARGUED MAY 17, 2022 — DECIDED AUGUST 11, 2022

Before SYKES, *Chief Judge*, and KIRSCH and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Chapter 7 Debtor Michael S. Helmstetter appeals the bankruptcy court's decision approving a settlement agreement entered into on behalf of his estate and executed by the estate's trustee. But because Helmstetter fails to show how it is likely—and not merely speculative—that his purported injury would be redressed by a favorable decision from this court, he lacks Article III standing to appeal the bankruptcy court's decision. Accordingly, we affirm the district court's judgment dismissing the bankruptcy appeal for lack of jurisdiction.

**I**

In 2014, five years before Helmstetter voluntarily filed for Chapter 7 bankruptcy, he filed a lawsuit in state court against his former employers, Kingdom Chevrolet, Inc., and Western Avenue Nissan, Inc., and their majority shareholder, Richard Ruscitti (collectively, the "Kingdom Entities"). The Kingdom Entities then filed counterclaims and a separate lawsuit against Helmstetter in state court. The state court litigation between Helmstetter and the Kingdom Entities was automatically stayed when Helmstetter filed his bankruptcy petition in October 2019. At the time of the stay, the parties had only completed limited written discovery.

As expected, after Helmstetter filed his bankruptcy petition, an estate was created containing all of his legal and equitable property interests, including the state court litigation. *See* 11 U.S.C. § 541(a)(1). The bankruptcy court appointed David Herzog as trustee over Helmstetter's estate. Trustee Herzog's task was to "gather the estate's assets for pro rata distribution to the estate's creditors." *In re Teknek, LLC*, 563 F.3d 639, 645 (7th Cir. 2009) (citation omitted). To facilitate the distribution process, Helmstetter filed three schedules of assets and liabilities under penalty of perjury with the bankruptcy court. He filed his first set of schedules in November 2019 and his first amended set in April 2020. In both sets of schedules, Helmstetter valued his total assets at approximately $8.5 million, which included his projected recovery in the state court litigation of between $5 million and $7.5 million, and some "other assets" worth roughly $1 million to $3.5 million. In both sets of schedules, Helmstetter valued his liabilities between approximately $6.5 million and $10.5 million.

After Helmstetter filed the first amended schedules but before Helmstetter filed his second amended schedules, Trustee Herzog moved the bankruptcy court to approve a settlement agreement between the Kingdom Entities and Trustee Herzog, on behalf of the estate. Relevant to this appeal, the parties agreed to dismiss the state court litigation; the Kingdom Entities agreed to pay $550,000 to Trustee Herzog for the benefit of the estate; and Trustee Herzog agreed to transfer to the Kingdom Entities the estate's interests, if any, in the Kingdom Entities and related companies.

Subsequently, Helmstetter filed his second amended schedules wherein he valued his total assets at $43 million[1] and his liabilities at approximately $20 million. His total assets included $16 million for the estate's recovery in the state court litigation and $24 million for other assets. The "other assets" valuation now included $20 million from purported claims against third parties. Helmstetter's new valuations copied estimates from a report produced by accountants from The BERO Group. Helmstetter provided no evidence to support the estimates, and the report does not explain how the accountants reached the estimates or what methodologies they used. Helmstetter then objected to Trustee Herzog's motion to approve the settlement, arguing that the settlement was improper because it undervalued the state court litigation.

The bankruptcy court held a hearing on Trustee Herzog's motion to approve the settlement. Relying on the second

---

[1] Helmstetter actually valued his total assets at nearly $60 million in the second amended schedules, but he revised that amount to $43 million in his district court briefing.

amended schedules and The BERO Group report, Helmstetter argued at the hearing that the state court litigation recovery was worth $16 million, so the $550,000 proposed settlement was insufficient. Trustee Herzog disputed Helmstetter's increased valuation of the state court litigation. He argued that Helmstetter wanted the estate to hire a new attorney who requested a 50 percent contingency fee to recover the projected $16 million, so even accepting the $16 million figure, the state court litigation recovery amount was much lower than Helmstetter's projections.

Over Helmstetter's objection, the bankruptcy court approved the settlement agreement, finding that it was fair and reasonable and that approving it was in the best interest of the estate.

Without seeking a stay of the bankruptcy court's order, Helmstetter appealed the bankruptcy court's decision to the district court, arguing that the bankruptcy court improperly approved the settlement agreement and undervalued the state court litigation. He also filed a motion to supplement the record, to conduct discovery, and for appointment of a special master. Trustee Herzog moved to dismiss the appeal for lack of standing. He argued that Helmstetter did not have a reasonable expectation of recovering a surplus after the estate paid all creditors, therefore Helmstetter would not benefit from reversal of the bankruptcy court's order. Helmstetter countered that, based on The BERO Group report and the second amended schedules, the estate would have a $20 million surplus after paying the creditors.

The district court granted Trustee Herzog's motion and denied Helmstetter's motion. Helmstetter timely appealed to this court. At some point before this appeal, Trustee Herzog

and the Kingdom Entities executed the settlement agreement and dismissed the state court litigation.

## II

In this appeal, Helmstetter maintains that the bankruptcy court undervalued the estate's potential recovery from the state court litigation and erred in approving the settlement. He also challenges the district court's decision dismissing the matter for lack of jurisdiction and denying his request to supplement the bankruptcy court record. Trustee Herzog argues that Helmstetter lacks standing to bring this appeal for the same reasons advanced in the district court. Alternatively, Trustee Herzog argues that the appeal is moot, both equitably and under 11 U.S.C. § 363(m), because the settlement agreement is complete and the state court litigation has been dismissed.

Article III standing is jurisdictional, so if Helmstetter lacks standing, we lack jurisdiction to address the merits of this appeal. *See Nowlin v. Pritzker*, 34 F.4th 629, 632 (7th Cir. 2022). Accordingly, we start (and end) our analysis with Helmstetter's standing, and our review is *de novo*. *Id.*

"The test for standing is a familiar one: [a] plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022) (quoting *California v. Texas*, 141 S. Ct. 2104, 2113 (2021)). "Standing is lacking if it is merely speculative'—as opposed to likely'—that the plaintiff's injury would be redressed by a favorable decision." *In re GT Automation Grp., Inc.*, 828 F.3d 602, 604 (7th Cir. 2016) (quoting *United States v. Windsor*, 570 U.S. 744, 757 (2013)). We have

"noted that debtors often lack standing to challenge bankruptcy orders  because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor[,]'" and therefore, it is unlikely that a favorable decision from this court would redress the debtor's injury. *Id.* at 604–05 (citation omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *See Pavlock*, 35 F.4th at 588.

Helmstetter fails to meet his burden because he provides only speculative support that he would recover from the estate after creditor distribution, such that reversing the bankruptcy court's decision would likely redress his injury. He argues that he would recover the estate's $20 million surplus. But this "surplus" is based on The BERO Group's estimates of $16 million from the state court litigation and $20 million from purported claims against third parties. Critically, Helmstetter fails to provide any support for these estimates or The BERO Group's calculations. Indeed, at oral argument, Helmstetter's attorney could explain only that the estimates were based on records available to The BERO Group. He could not articulate what methodologies The BERO Group used to produce the estimates, and he professed that he "can't speak to" how The BERO Group determined the value of the purported claims against third parties. Helmstetter's abstract notion of a "surplus" is insufficient to establish standing and confer jurisdiction upon this court. *See GT Automation*, 828 F.3d at 605 (holding that appellant failed to demonstrate Article III standing to appeal a bankruptcy court's decision where it was only "theoretically possible" for appellant to receive any benefit from the estate).

At most, Helmstetter's assets total $15 million. This amount generously includes $8 million in recovery from the

state court litigation (after paying a 50 percent contingency fee to a new attorney).[2] The amount does not include any of the $20 million in purported claims against third parties that Helmstetter fails to substantiate.[3] Because Helmstetter's assets do not exceed his conceded liabilities of $20 million, Helmstetter cannot explain how it is "likely" that any distributions from the estate will ultimately flow to him. *See GT Automation*, 828 F.3d at 604. Because Helmstetter fails to demonstrate that he would be able "to realize any economic benefit from a potential reversal," *id.* (quotation omitted), he lacks standing. Therefore, we affirm the district court's judgment dismissing the bankruptcy appeal, and we do not reach the merits of Helmstetter's claim or Trustee Herzog's arguments that the matter is moot.

AFFIRMED

---

[2] We say "generously" because the state court litigation was dismissed with prejudice in September 2021, which means Helmstetter cannot recover anything from the litigation.

[3] Indeed, at oral argument, Trustee Herzog's attorney highlighted that those claims have been monetized for less than $40,000 and some claims sold for as little $1.